# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SKYLAR JOHN PLATT,<br><br>    Plaintiff,<br><br> vs.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,[1]<br><br>    Defendant. | Case No. 19-cv-00192-DKW-WRP<br><br>**ORDER AFFIRMING IN PART AND REMANDING IN PART DECISION OF COMMISSIONER OF SOCIAL SECURITY** |

On April 16, 2019, Plaintiff Skylar John Platt appealed the Acting

Commissioner of Social Security's denial of his application for disability insurance

benefits. In his Opening Brief, Platt asks this Court to review (1) the

Administrative Law Judge's ("ALJ") failure to discuss and/or rejection of medical

evidence and opinions, and (2) the ALJ's rejection of his symptom testimony.

After carefully reviewing the record below and the parties' submissions, the Court

disagrees that the ALJ erred in failing to discuss or in rejecting medical evidence

and affirms the decision of the Commissioner of Social Security in that regard.

However, because the ALJ failed to provide clear and convincing reasons for

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul was automatically substituted as the party-defendant in this action upon his confirmation as the Commissioner of Social Security.

rejecting Platt's symptom testimony, the Court REMANDS with respect to that issue, as set forth below.

## BACKGROUND

I. **Review of Disability Claims**

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA). 20 C.F.R. § 404.1520. First, the claimant must demonstrate that he is not currently involved in any substantial, gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. *Id.* §§ 404.1520(a)(4)(ii), (c). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work. *Id.* § 404.1520(e). The evaluation then proceeds to a fourth step, which requires the claimant to show his impairment, in light of his RFC, prevents him from performing work he performed in the past. *Id.* §§ 404.1520(a)(4)(iv), (e), (f). If the claimant is able to perform his previous

work, he is not disabled. *Id*. § 404.1520(f). If the claimant cannot perform his past work, though, the evaluation proceeds to a fifth step. *Id*. § 404.1520(a)(v), (g). At this final step, the Commissioner must demonstrate that (1) based upon the claimant's RFC, age, education, and work experience, the claimant can perform other work, and (2) such work is available in significant numbers in the national economy. *Id*. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at step five, the burden moves to the Commissioner). If the Commissioner fails to meet this burden, the claimant is deemed disabled. 20 C.F.R. § 404.1520(g)(1).

## II.     The ALJ's Decision

On May 2, 2018, the ALJ issued a decision finding Platt not disabled for purposes of the SSA from the alleged onset date of September 8, 2015 through the date of the decision. Administrative Record ("AR") at 21. At Step One of the evaluation process, the ALJ determined that Platt had not engaged in substantial gainful activity since September 8, 2015. *Id*. at 15. At Step Two, the ALJ determined that Platt had the following severe impairments: degenerative disc disease of the lumbar spine with mild L2-3 canal and L3-4 right foraminal stenosis; bursitis and osteoarthritis of the left shoulder; squamous cell carcinoma; cervical disc disorder; and injury to right upper extremity, with surgical repair in February

3

2018. *Id*. at 16. At Step Three, the ALJ determined that Platt did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. *Id*.

Before reaching Step Four, the ALJ determined that Platt had the RFC to perform "light work" with the following limitations:

> [H]e could lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; he could stand/walk for 6 hours out of 8; he could sit for 6 hours out of 8; he could occasionally perform postural activities; he could frequently push/pull with the non-dominant left upper extremity; he could frequently perform overhead reaching bilaterally; he could have no exposure to hazardous machinery or unprotected heights, to include no ladders, ropes, or scaffolds; he cannot work in direct sunlight.

*Id*.

At Step Four, the ALJ determined that Platt was unable to perform any past relevant work. *Id*. at 19. At Step Five, the ALJ determined that there were jobs existing in significant numbers in the national economy that Platt could perform. *Id*. at 20. More specifically, a vocational expert stated that, in light of Platt's RFC, age, education, and work experience, he would be able to perform the jobs of small products assembler, mail clerk, and cannery worker. *Id*. This final

determination resulted in the ALJ finding that Platt was not disabled for purposes of the SSA from September 8, 2015 through the date of the decision.  *Id*. at 21.[2]

## III.    **This Action**

In his Opening Brief, Dkt. No. 13, Platt raises two principal arguments. First, the ALJ failed to discuss relevant medical evidence in the record and erred in rejecting medical opinions.   Second, the ALJ failed to provide specific, clear, and convincing reasons for rejecting Platt's symptom testimony.

## **STANDARD OF REVIEW**

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence."  *Ryan v. Comm'r of Soc. Sec*., 528 F.3d 1194, 1198 (9th Cir. 2008).   "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Id*. (quotation omitted).   Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted).   "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."

---

[2]On February 14, 2019, the Appeals Council denied Platt's request for review of the ALJ's decision.   AR at 1.

*Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation and citation omitted). In making this assessment, a court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.* at 1115.

## DISCUSSION

## I.  Medical Evidence and Opinions

In his Opening Brief, Platt argues that the ALJ both failed to address "significant amounts of medical evidence related to [his] chronic pain" and erred in rejecting the opinions of Dr. Timothy Duerler. Dkt. No. 13 at 16-23. The Court addresses each of these arguments in turn.

First, Platt argues that the ALJ failed to discuss three exhibits in the record: one containing 40 pages of physical therapy records; one containing records from a treating neurosurgeon, Dr. Kenneth Kaan; and one containing records from

neurosurgeon Dr. Jon Graham. *Id*. at 16-20. Platt argues that these exhibits contain significant and probative evidence of his chronic pain being more limiting than the ALJ found in the RFC. More specifically, Platt asserts that Dr. Graham's notes show that he was recommended for surgery due to low back pain, Dr. Kaan's notes reflect an abnormal range of motion, and the physical therapy notes show that he had pain and stiffness when stooping.

None of these arguments, however, adequately explain why the evidence Platt relies upon was significant and probative and, thus, mandated discussion from the ALJ. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (stating that an ALJ does not need to discuss all evidence presented, but must explain why "significant probative evidence has been rejected.") (quotation omitted). Instead, Platt's arguments are premised on his speculation that the cited evidence was significant and probative.

For example, as to Dr. Graham's notes, while Platt states that various findings were made and the doctor recommended surgery, *see* Dkt. No. 13 at 16-17, at no point does Platt explain why any of these findings or the recommendation undermine the RFC. *See Haynes v. Colvin*, 614 F. App'x 873, 875 (9th Cir. June 11, 2015) (concluding that an ALJ did not err in assessing residual functional capacity because, in part, the claimant did "not explain how the evidence of

7

physical ailments that he lists is significant probative evidence of greater limitations than those already incorporated into the ALJ's decision.") (quotation omitted). Instead, Platt speculates that, because Dr. Graham recommended surgery, his "pain complaints were found credible enough…." Dkt. No. 13 at 17. There is, however, no medical evidence, and certainly no opinion from Dr. Graham, that the doctor's findings and recommendation warranted a more restrictive RFC than the one the ALJ identified. As for Dr. Kaan's notes, Platt again recites various findings the doctor made as well as the doctor's statement that Platt's condition was "not amenable to surgery." *Id*. at 17-18. But, again, Platt fails to provide any explanation as to why these findings and recommendation are significant or probative.

As for the physical therapy notes, on this occasion, Platt does appear to contend that the notes undermine the RFC. He argues that the various findings and observations therein show that he had pain and stiffness when stooping, which, he asserts, undermines the ALJ's determination that he could occasionally stoop. *Id*. at 19-20. The problem with this assertion is that it is not supported by any medical opinion in the record. In other words, there is no medical opinion in the record stating that Platt's pain and stiffness when stooping prevent him from occasionally stooping. Instead, it is merely Platt's own opinion that the former

(pain and stiffness) leads to the latter (being unable to occasionally stoop).[3]

Moreover, the only doctors to review the physical therapy notes *and* render an opinion as to their effect on the RFC came to a conclusion contrary to that by Platt. Specifically, Drs. Harp and Shibuya reviewed the physical therapy notes (AR at 55-56, 68-69), noted the limitation in the range of motion for Platt's lumbar spine (*id*. at 57, 76), and determined that Platt could occasionally stoop (*id*. at 60, 74). As such, Platt has failed to show that the physical therapy notes undermined the RFC or were otherwise significant or probative.

Second, Platt argues that the ALJ erred in rejecting the opinions of Dr. Timothy Duerler that Platt was unable to work. Dkt. No. 13 at 21-23. Platt argues that Dr. Duerler's opinions were supported by objective findings in the medical record, and the doctor made relevant findings about Platt's condition. In response, the Commissioner argues that Dr. Duerler's opinions about Platt being unable to work were brief, addressed an issue reserved to the ALJ, and were inconsistent with the overall record. Dkt. No. 14 at 12-15.

In the ALJ's decision, the ALJ gave little weight to Dr. Duerler's opinions. AR at 19. The ALJ observed that, in June 2016, Dr. Duerler opined that Platt

---

[3]As such, the facts in this case are different from those in the case cited by Platt, *Williams v. Berryhill*, 2019 WL 923749 (D. Nev. Feb. 1, 2019), where an examining orthopedist opined that the claimant was precluded from stooping, *id*. at *5. There is no similar opinion here.

would be unable to work until September 30, 2016.   The ALJ stated that this

limitation was a "precaution" and did "not represent an earnest attempt to evaluate

[Platt's] remaining functioning."   The ALJ also found that later evaluations did

not justify the complete work restriction Dr. Duerler gave.   The ALJ further

observed that, in April 2017, Dr. Duerler stated that Platt was no longer able to do

"the work" and should be considered medically disabled.   The ALJ determined

that this opinion was not well supported or consistent with the record.   *Id*.

     The Court agrees with the Commissioner that Dr. Duerler's opinions about

Platt being unable to work are far too brief and incomplete to warrant any

meaningful weight being afforded them.   In Dr. Duerler's June 2016 letter, he

states that, due to multiple low back injuries, Platt was unable to work through

September 30, 2016.   AR at 771.   No further explanation is given for this

statement.   For example, Dr. Duerler does not explain why Platt's injuries prevent

him from working, such as relevant limitations those injuries may impose on

Platt's ability to work.   In addition, as the Commissioner asserts, for purposes of

the SSA, it is far from clear whether Dr. Duerler intended, or, if he did, if he was

even qualified, to determine that Platt was unable to perform any work that exists

in significant numbers in the national economy.   *See* Dkt. No. 14 at 14-15 (citing

*McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)).   Moreover, as the

Commissioner further asserts, such a determination was not one for Dr. Duerler to make for purposes of this case, as the issue of disability–in other words, the ability to do any work–is for the ALJ to determine. *Id*. at 12-13 (citing 20 C.F.R. § 404.1527(d)(3)).[4]

In Dr. Duerler's April 2017 letter, he states that he has been Platt's primary care physician since 2008 and, during this time, Platt "has continued to want to work in a very physically demanding job[,] [h]owever recently his lumbar degenerative disc disease has progressed to a point where he is no longer [able] to do the work and should be considered medically disabled." AR at 792. If anything, this letter confirms the problems noted above with respect to Dr. Duerler's June 2016 letter. Notably, it appears that Dr. Duerler believes that, because Platt may not be able to perform his former job, he is disabled. This is simply not the case for purposes of the SSA. *See* 20 C.F.R. § 404.1520(a)(v).[5] This apparent misunderstanding on Dr. Duerler's part, at least for purposes of this case, leads to additional problems given that no further explanation is provided for

---

[4]Contrary to Platt's assertion in his reply brief, other than stating that Platt could not work due to his low back injuries, Dr. Duerler did not offer any support for his June 2016 opinion. *See* Dkt. No. 15 at 14-15. While a January 2017 letter could provide support for an opinion made six months earlier, Platt does not explain how it did so here. *See id*.

[5]As the Commissioner observes, the ALJ *agreed* with Dr. Duerler that Platt could not do his past work. *See* Dkt. No. 14 at 14 (citing AR at 19).

the doctor's broad statement that Platt is unable to work.  For example, in April 2017, Dr. Duerler again fails to explain what limitations Platt may have had that would prevent him from working.[6]  As such, the ALJ did not err in declining to give any great weight to Dr. Duerler's opinions that Platt could not work.

## II.    <u>Symptom Testimony</u>

In his Opening Brief, Platt argues that the ALJ erred in rejecting his symptom testimony.  Dkt. No. 13 at 25-31.  Platt argues that the ALJ failed to explain the relevance of him having, at times, a normal gait, the ALJ mischaracterized various medical evaluations in the record, the ALJ should not have relied on an MRI examination from February 2016, and the ALJ failed to discuss an adult function report concerning Platt's daily activities.  In response, the Commissioner argues that the ALJ made sufficiently specific findings in rejecting Platt's symptom testimony.  Dkt. No. 14 at 20-25.  The Commissioner argues that the February 2016 MRI showed no significant change compared to a time when Platt was able to work, Platt's normal gait was inconsistent with his statements about his ability to walk, Platt's condition improved significantly

---

[6]Contrary to Platt's assertion in his reply brief, Dr. Duerler's April 2017 letter provides no meaningful support for his opinion that Platt could not work.  *See* Dkt. No. 15 at 15.  Dr. Duerler, for instance, fails to connect any of Platt's recited medical history to specific limitations that might lead to the conclusion that Platt is unable to work.  *See* AR at 792.

following physical therapy and medication, and Platt's daily activities were inconsistent with being disabled.[7]

In the Ninth Circuit, when considering a claimant's symptom testimony, an ALJ must, first, determine whether (1) objective medical evidence has been provided of an underlying impairment that may reasonably produce the symptom(s) alleged, and (2) the claimant is malingering. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-493 (9th Cir. 2015). Here, the ALJ found that Platt's medically determinable impairments could reasonably be expected to cause his alleged symptoms. AR at 17. In addition, the ALJ made no finding that Platt was malingering.

As a result, in order for the ALJ to reject Platt's testimony about the severity of his symptoms, the ALJ was required to provide "specific, clear and convincing reasons for doing so." *Brown-Hunter*, 806 F.3d at 493.[8] "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

---

[7]The Court notes that, in his response brief, the Commissioner makes a number of arguments with respect to these issues that rely, at least in part, upon evidence that the ALJ did not rely upon. *See* Dkt. No. 14 at 22-24. Because this Court cannot consider any such evidence on review, the same is not further addressed herein. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (explaining that a reviewing court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ").

[8]In a footnote, the Commissioner appears to dispute this standard of review. Dkt. No. 14 at 21 n.7. But the Commissioner also acknowledges that this standard of review comes from binding Ninth Circuit precedent, *see id.*, which this Court is thus obligated to follow.

evidence undermines the claimant's complaints." *Id*. The reason for specificity is so a reviewing court can "conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Id*.

Here, while the Court acknowledges that some of the reasons given by the ALJ support the conclusion reached about Platt's symptom testimony, the Court agrees with Platt that the ALJ failed to provide the specific and convincing reasons required by the Ninth Circuit. The Court begins with the reasons that fall short of convincing. First, the ALJ determined that Platt "continued to be active with the aid of medication[,]" pointing to Platt's ability to "walk, do dishes, do laundry, and enjoy family activities." *Id*. at 18. As an initial matter, no explanation is provided for why doing dishes and laundry render Platt "active[,]" as the ALJ described him. As for walking and family activities, no specificity is provided for how far Platt could walk or in what family activities he engaged. Perhaps more important, no attempt is made to explain how the limited number of activities mentioned by the ALJ rendered Platt able to do the work the vocational expert identified Platt as being able to do.

In addition, as Platt observes, the ALJ failed to mention, at least with any specificity, what appears to be the only adult function report in the record. *See*

Dkt. No. 13 at 29-31.[9]   The adult function report is dated December 23, 2015.

AR at 205.[10]   Therein, Platt, through the assistance of a friend,[11] asserts that he:

prepares simple meals; does general cleaning and laundry, with some days being

better than others; goes outside daily; drives a car; shops for groceries; needs a

friend to help with bookkeeping tasks; watches television and his dog play in the

yard; meets with friends, with the frequency depending on his pain; would like to

be more active but for his pain; can walk a quarter mile "on a good day[;]" and

mainly performs "light dut[ies]" because his conditions have affected his ability to,

among other things, bend, squat, and walk.   *Id*. at 198-205.   The ALJ cited to the

adult function report, *id*. at 18 (citing Exhibit 4E), and determined that it was

inconsistent with the medical evidence and Platt's reported level of activity

throughout the record, such as his ability to walk, do dishes and laundry, and enjoy

family activities, *id*. at 18-19.

---

[9]The Court notes that the Commissioner fails to mention the adult function report in his response brief.

[10]As such, the function report is a window into Platt's activities relatively early-on in his alleged period of disability.   The Court leaves for the ALJ on remand to determine whether the activities (or lack thereof) recorded in the function report continued for the remainder of the alleged disability period.

[11]The function report states that Platt is dyslexic and a friend, Elizabeth Wewers, helps him with paperwork.   AR at 205.

The adult function report, however, is not inconsistent with Platt's "reported level of activity throughout the record[.]"   If anything, the function report is entirely *consistent* with the same, as Platt states that he can walk a quarter mile on a good day, does general cleaning and laundry, and watches his dog play in the yard.   All of those statements are consistent with the general statements that Platt can walk an unidentified distance, do dishes and laundry, and enjoy unidentified family activities.   The problems with the ALJ's analysis, therefore, are two-fold: (1) the ALJ ignored all of the other statements that Platt made in the function report, even though his statements were entirely consistent with the activities upon which the ALJ relied; and (2) the ALJ failed to explain why Platt's reported activities rendered him able to work.   Put simply, Platt's daily activities, at least as of December 23, 2015, do not provide any reason (let alone a convincing one) to reject his symptom testimony.

Second, the ALJ observed that, in various medical evaluations, Platt was found to have a well-coordinated or normal gait.   AR at 17-18.   At no point, however, does the ALJ explain why this was a reason to reject Platt's symptom testimony.   As just discussed, Platt stated in the adult function report that he could walk a quarter mile on a good day.   The fact that Platt may have done so with a normal gait does not discount all of the other statements Platt made in the function

report, or even that he could only walk a quarter mile on a good day. Platt's normal gait, therefore, is not a convincing reason to reject his symptom testimony, at least not without further explanation from the ALJ.

Third, the Court agrees with Platt that, in certain instances, the ALJ mischaracterized or "cherry-picked" from treatment notes in the record. For example, the ALJ stated that, in December 2015, Platt reported to Dr. Michael Nichols that he had "experienced improvement" in his back pain and, in February 2018, he reported to Dr. Russell Parker that he was "doing fairly well with reduced narcotic dose." AR at 17-18. As for Dr. Nichols, the notes actually stated that there had been "*some* improvement" with physical therapy. *Id*. at 307 (emphasis added). Moreover, at the same cited visit, Dr. Nichols gave Platt a lumbar "facet block" injection due to the level of his low back pain. *Id*. at 310. As such, to the extent Platt had experienced improvement in his condition, it is not a convincing reason to reject his symptom testimony in light of the entire record. As for Dr. Parker, the ALJ accurately observed that Platt reported he was doing fairly well with a reduced narcotic dose. *See* AR at 853. The ALJ concluded that this report showed that Platt's symptoms were managed sufficiently for work consistent with the RFC. *Id*. at 18. However, Dr. Parker's notes from the relevant visit also show that Platt reported "having horrible insomnia still – will not sleep for days

then crash for a day…." *Id*. at 853. In this light, while Platt's narcotic regimen may have allowed him to tolerate pain better, his sleep was suffering. This is notable, given that the vocational expert testified that, if a person with Platt's RFC missed five days of work a month, he could not sustain any employment. *See id.* at 51. As such, as with the notes of Dr. Nichols discussed above, to the extent Platt experienced improvement with respect to his pain, it is still not a convincing reason to reject his symptom testimony without further explanation from the ALJ.[12]

As stated, the Court agrees that some of the reasons relied upon by the ALJ provide some support for not giving credence to Platt's symptom testimony. That being said, those same reasons also show the limits of that support. First, the ALJ stated that an MRI performed in February 2016, after the alleged onset date, showed no significant change from an MRI performed before the alleged onset date. AR at 17-18. In his Opening Brief, Platt argues that the ALJ should not have relied upon the MRI because the ALJ is not allowed to "substitute" his

---

[12]The Court adds, with respect to Dr. Parker's notes, that, at the visit preceding the one in February 2018, Platt did not report that he was doing fairly well with his changed medication. Instead, Platt reported that, due to a change in his medicine, he was in "much worse pain" and was "self treating" himself with other medicine. AR at 849. The Court mentions this not because it means that Platt's pain condition had not improved by the February 2018 visit, but, rather, because it may suggest that a more representative view of the entire record shows that he was disabled for some period of time after his alleged onset date. The Court leaves that issue to be definitively addressed on remand.

opinion for that of the medical source.  Dkt. No. 13 at 27 (quotation omitted).

However, the ALJ did not substitute his opinion for that of the medical source in

this instance.  Instead, the ALJ *adopted* the opinion of the medical source–the

radiologist–who determined that there was no significant change in Platt's spine.

*See* AR at 458.  Nonetheless, the MRI is from February 2016.  Simply because

Platt's spine had not significantly changed at that early point following the alleged

onset does not mean that changes did not occur thereafter, especially seeing as

Platt subsequently suffered a motor vehicle accident.  *See id*. at 18.  As such,

while the February 2016 MRI provides some support for the ALJ's determination

in this regard, it is limited and, alone, not convincing.  *See Burch v. Barnhart*, 400

F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the

sole basis for discounting pain testimony, it is a factor that the ALJ can consider in

his credibility analysis.").

　　　Second, the ALJ stated that, in December 2015, Platt reported to a physical

therapist that he was "feeling better" with pain being 3 out of 10.  *Id*. at 17.

Although Platt contends otherwise, this is an accurate summary of the relevant

notes.  *See id*. at 376.  Specifically, contrary to Platt's contentions, the ALJ did

not mischaracterize this report or improperly ignore notes from a subsequent visit.

*See* Dkt. No. 13 at 26-27.  At the referenced visit, the physical therapist also

reported that, although Platt "struggle[d] initially," he did "very well" at the visit and experienced a reduction in pain.   AR at 379.   As for the next visit, it is Platt who mischaracterizes the record, not the ALJ.   Notably, while the therapist did report that "new exercises really caused some achy pain[,]" this was a "good thing because the muscles are working[,]" Platt was "really starting to feel changes[,]" and Platt was "very motivat[ed]."   *Id*. at 372.   The therapist further reported that Platt "continue[d] to make incremental improvements[,]" which was a "big improvement and moving towards increasing freedom of movement."   *Id*. at 375. In this light, the December 2015 notes from the physical therapy visits provide further support, along with the MRI, that, at least at that time, Platt's symptom testimony may not have been entitled to full weight.   Nonetheless, the physical therapy notes in the record appear to end with a visit on December 14, 2015.   *See generally id*. at 357-403.   In light of the medical evidence discussed above, such as the notes from Dr. Parker, simply because Platt's condition may have been improving (or not have changed) in December 2015 does not mean that his condition remained that way throughout the period after the alleged onset date. Therefore, on remand, if appropriate, the ALJ must provide clear and convincing reasons to reject Platt's symptom testimony for the period of alleged disability, rather than for a snapshot in time.

In summary, the Court finds that the ALJ failed to provide specific, clear, and convincing reasons for determining that Platt's symptom testimony was inconsistent with the overall record.[13]  The Court REMANDS this single issue for the ALJ to reassess Platt's testimony, taking into account the findings herein.

## CONCLUSION

To the extent set forth herein, the Commissioner's decision denying Platt's application for disability insurance benefits is AFFIRMED IN PART and REMANDED IN PART for further administrative proceedings consistent with this Order.   The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: January 28, 2020 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

_Skylar John Platt v. Andrew Saul;_ Civil No. 19-00192 DKW WRP; **ORDER AFFIRMING IN PART AND REMANDING IN PART DECISION OF COMMISSIONER OF SOCIAL SECURITY**

---

[13]As for specificity, the Court notes that the ALJ described Platt's testimony as "statements about the intensity, persistence, and limiting effects of his or her symptoms…."  AR at 17.   This language is notable if for no other reason than that it fails to identify whether Platt is male or female.  _See id._ ("…his or her symptoms….").   As such, it would appear the only conclusion that can be drawn is that the foregoing language in the ALJ's decision is (at best) generic, given that it could be used in _any_ case.